JOURNAL ENTRY AND OPINION
{¶ 1} Defendant-appellant Calvin Fenderson ("defendant") appeals his jury trial conviction for theft, in violation of R.C. 2913.02, a fifth degree felony.
 {¶ 2} The sixty-two-year-old defendant and the sixty-year-old victim, Wesley Scott, had been seeing each other for over ten years. On the evening in question, they were at the victim's home and decided to go out to a bar.
 {¶ 3} The victim testified that she had left in her locked bedroom on top of the dresser and in plain view over seven hundred dollars, a diamond ring, and defendant's gun. The couple went out for a drink and returned less than an hour later.
 {¶ 4} She confronted him about buying crack cocaine at the bar. When he denied buying the drugs, she made him empty his pockets. She found a rock of crack cocaine sitting on the bed and she flushed it down the toilet. Defendant then asked to borrow twenty dollars, but she refused to lend it to him.
 {¶ 5} Next defendant asked her to go to his car and get his cigarettes. She then returned to her bedroom, where defendant had remained. At that point, because they decided to go back out, defendant went to his car. Meanwhile, when she went to her dresser to get more money, saw that her money, the ring, and his gun were missing.
 {¶ 6} The victim went outside, opened the car door, and accused him of stealing her money. She testified that she found her coin purse with $63.00 on the floor of the car and grabbed it. As they argued, defendant pulled some money out of his pocket, some of which she grabbed. Defendant then drove away.
 {¶ 7} Defendant testified that he never noticed the items on the dresser, that the money on the floor of the car was his and that he had never taken any of her money. He also denied her claim that he backed out of the driveway in a hurry to prevent her from getting more money out of his pocket.
 {¶ 8} The parties' stories vary even more from this point. The victim did not report the theft to the police for six days because, she testified, when she spoke to him the next day, defendant promised her that one of his relatives would repay her. She also did not want to cause trouble for him. She claimed that, three or four weeks after the incident, they took a trip to the casinos in Detroit where he again promised to repay the money. Defendant denied, however, that any trip to Detroit took place. The only money the girlfriend received, according to her testimony, was the $67.00 that was in the coin purse she grabbed from the floor of defendant's car.
 {¶ 9} She said that when he did not repay the money, she went to the police station and complained about the theft. Because she went to the police on a federal holiday, the desk officer took a five-minute statement from her. The contents of this statement varied in several areas from the testimony she gave at trial. The police report states that the amount of money was $763.00 and that the money was taken from her purse in the living room, whereas she testified that the amount was $740.00 and that it was taken from the bedroom. The police report does not contain any information concerning crack cocaine.
 {¶ 10} Defendant argued that the victim's motivation for claiming he stole her money and ring was revenge because she was jealous of his other girlfriends. He stated the victim had known about the woman he lived with and about the other women he had relationships with during the time he was also seeing her. Defendant also claimed the victim was angry because she asked him to buy a house with her and he refused. He admitted, however, that she had owned her own home for thirty years and that she received income from her renters. He confirmed that she and others had given him money for his mother's funeral and that he had borrowed luggage from her and never returned it.
 {¶ 11} The defense also produced the policeman who took the initial police report from the girlfriend, and she verified the accuracy of his report. The jury found defendant guilty as charged, and he timely appealed.
 {¶ 12} Defendant states one assignment of error, which states:
 {¶ 13} "I. The jury's verdict was against the manifest weight of the evidence."
 {¶ 14} Conceding that the state provided sufficient evidence, defendant argues that the jury's verdict was against the manifest weight of that evidence. When considering a claim concerning the weight of the evidence, an appellate court must determine whether the greater amount of credible evidence supports the verdict. This determination is not a mathematical weighing of evidence; rather, it examines the evidence for its effect in inducing belief. State v. Thompkins (1997),78 Ohio St.3d 380, 387.
 {¶ 15} The appellate court must review the entire record, weigh the evidence along with all reasonable inferences, assess the credibility of the witnesses and then determine whether or not the jury lost its way in resolving the conflicts in the evidence. Only if the appellate court determines that the jury clearly lost its way and that in so doing its verdict resulted in such a manifest miscarriage of justice should it reverse the verdict and order a new trial. State v. Martin (1983),20 Ohio App.3d 172. Because the appellate court cannot assess the demeanor of the witness, deference on issues of credibility is given to the trier of fact, who is in the position of observing the witness. Statev. Antill (1964), 176 Ohio St.2d 61, State v. DeHaas (1967),10 Ohio St.2d 230.
 {¶ 16} In the case at bar, defendant argues that the victim contradicted herself in her statements concerning the amount and location of the missing money. He also states that they never took the trip to Detroit she claims they took. These discrepancies, he says, should show that her testimony was unreliable and therefore his testimony and that of the policeman had greater weight.
 {¶ 17} Defendant's testimony, however, was no more credible than the victim's. He claimed that she was seeking revenge because he refused to buy a house with her, despite the fact that she owned her own home and received income from it.[1] He also claimed that she was jealous of his other girlfriends and he recounted incidents in which the victim supposedly confronted some of those other women. Under cross-examination, however, defendant admitted that the victim knew about the woman he has lived with for ten or twelve years, as well as another woman he lived with earlier. When the prosecutor questioned why, after all the years of knowing about the other women, the victim suddenly would become so jealous of them that she accused him of stealing her money, he admitted, "I doubt if she did." Tr. at 92. Later, when the prosecutor stated, "you expect this jury to believe that even though [the victim] knew about Harriet, and knew about Alice, all of a sudden on February 13th, she got jealous?" he responded, "Well, she had to."
 {¶ 18} Most confusing, however, is his account of the money the victim picked up from the floor of his car. On direct examination, he stated, "I get in my car and she runs out there, opened my car door and reached down onto the floorboard, and picks up some money.
 {¶ 19} "So I said, well, now, pick up the money. This money is mine." Tr. at 87. On cross-examination, however, he stated that when the victim reached into his car, "she didn't get no money because I didn't have her money." Tr. at 97. He then said, "The money was there, it was mine. Wasn't none of hers." Id. Because of defendant's general lack of skill with language, it is difficult to determine whether he is contradicting himself at this point or is merely imprecise and clarifying that imprecision.
 {¶ 20} Defendant also admitted that the victim had been good to him over the course of their relationship, had lent him money, helped pay for his mother's funeral, and lent him luggage, but he added that he had also been good to her.
 {¶ 21} When a transcript reveals discrepancies in the testimony of both the major witnesses, it is for the trier of fact to determine which one is more credible. The jury was present to assess the demeanor and veracity of the witnesses. In the case at bar, words on paper do not reveal whether a person is telling the truth or lying. When an appellate court does not have that additional and necessary information, it must defer to the jury's judgment regarding the truth of what happened. Neither party was entirely credible.
 {¶ 22} We cannot say, however, that defendant's conviction is against the manifest weight of the evidence. "The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." State v.Martin (1983), 20 Ohio App.3d 172, syllabus paragraph 3. In assessing the evidence presented at trial, we conclude it is possible to reach the conclusion that the jury reached. We cannot say, therefore, that the conviction is against the manifest weight of the evidence requiring a new trial.
 {¶ 23} This assignment of error is without merit.
Affirmed.
It is ordered that appellee recover of appellant its costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Common Pleas Court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
MICHAEL J. CORRIGAN, P.J., CONCURS IN JUDGMENT ONLY; ANNE L. KILBANE, J., CONCURS.
[1] The girlfriend testified that the renters were confined to an area of the home which was separated from hers at all times by a locked door. She also locked her bedroom door each time she left. She testified that the boarders were at work at the time of the theft.